IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| ASHLEY GALLEHER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARTISANAL, LLC and BILL GREENE,<br><br>Defendants. | Case No. 1:19-cv-0055-MOC-WCM<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff, Ashley Galleher and the opt-in plaintiffs, Jessica Brown, Lynn Daly, Macy Smith, Liza Stewart, Sydney Bandemer, Erin Sferrazza, Adam Smith, Brendan Bengtson (hereafter collectively "Plaintiffs"), by counsel, hereby submits this Memorandum in Support of Motion For Partial Summary Judgment and shows the Court as follows:

### I. STATEMENT OF NATURE OF MATTER BEFORE COURT

Plaintiff Ashley Galleher filed her Complaint ("Complaint") on February 18, 2019. (Dkt. No. 1.) Plaintiff's Complaint alleges minimum wage, overtime and unpaid wage claims against Artisanal, LLC ("Artisanal") and Bill Greene ("Greene") individually in violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") and the North Carolina Wage Payment Act, N.C. Gen. Stat. §§ 95.25.1 et. seq. ("NCWHA").[1] Defendants filed their Answer on June 14, 2019.

---

[1] To simplify the matter before the Court, Plaintiffs only intend to proceed against Defendant Artisanal and will stipulate to the dismissal of the individual defendant, Bill Greene. In addition, Plaintiffs will only pursue Counts I and II of their Complaint under the FLSA and will stipulate to the dismissal of Count III of their Complaint alleging claims under the NCWHA. Plaintiffs intend to file the pleadings necessary to affect the dismissals after the filing of this Motion.

(Dkt. 10.) On July 31, 2019, Galleher moved to Court to conditionally certify an FLSA collective action and facilitate notice to putative collective members. (Dkt. 14.) The Court granted Galleher's motion and conditionally certified the following collective class:

> All current and former employees of Defendants who were employed at the Artisanal restaurant in Banner Elk, North Carolina as servers, bussers, hostesses, and bartenders, or their functional equivalents, anytime during the three-year period preceding the filing of the Complaint in this action.

(Dkt. 18.) Following conditional certification, eight additional Tipped Workers opt-ed into this lawsuit.

Plaintiffs, who were servers, bussers, hostesses, food expediters and bartenders at Artisanal and received tips as part of their compensation ("Tipped Workers"), seek to recover unpaid minimum wages and overtime under the FLSA. (Dkt. 1, Count I and II.)[2] Plaintiffs assert that Artisanal had a policy and practice of failing to pay Plaintiffs minimum wage for all hours worked because Artisanal was unable to utilize the federal "tip credit" to supplement its sub-minimum wage rate of $2.13 because (1) it failed to provide adequate notice to Plaintiffs of the intention to use a portion of Plaintiffs' tips toward satisfying the federal minimum wage as required by section 203(m); and (2) it took improper deductions from Plaintiffs' minimum wage for breakage, laundry, uniforms, and other fees/charges. (Dkt. 1 at Count I.) Artisanal's improper payment of $2.13 per hour rather than the federal minimum wage of $7.25 results in minimum wage violations and an underpayment of $5.12 per hour for all hours worked by Tipped Employees. In addition, Plaintiffs also allege that Artisanal did not properly calculate Tipped Workers' regular rate/overtime for all

---

[2] Claims against Defendant Bill Greene and Count III of Plaintiff's Complaint are no longer being pursued. *See* footnote 1, *supra*.

hours worked over 40 in a workweek resulting in overtime violations of the FLSA. (Dkt. 1 at Count II)

Plaintiffs now move for partial summary judgment against Defendant Artisanal as to their federal FLSA minimum wage and overtime claims (Counts I and II) on the issue of liability only, as there can be no dispute of material fact, and leave the issue of damages to be resolved by the trier of fact.

## II. STATEMENT OF FACTS

### A.     Defendant Artisanal and its Tipped Workers

Defendant Artisanal, LLC ("Artisanal") owns and operates a fine dining establishment in Banner Elk, North Carolina. Artisanal's restaurant in Banner Elk is a seasonal establishment, operating from May through the end of October each year.[3] (Galleher Decl. ¶3.) Plaintiff Ashley Galleher worked as a bartender and server for Artisanal for approximately one year. (Galleher Decl. ¶4.) Artisanal employs an identifiable group of employees who received gratuities ("tips") as part of their total compensation, including Galleher, who are referred to herein as "Tipped Workers." (Galleher Decl. ¶5.) The other opt-in plaintiffs who joined Galleher's collective action were also Tipped Workers at Artisanal: Jessica Brown (server), Lynn Daly (bartender), Macy Smith (bartender), Liza Stewart (server), Sydney Bandemer, Erin Sferrazza (hostess), Adam Smith (busser), and Brenden Bengtson (busser). (Brown Decl. at ¶2; Daly Decl. at ¶2; Bengston Decl. at ¶2; M. Smith Decl. at ¶2; A. Smith Decl. at ¶2; Stewart Decl. at ¶2; Sferrazza Decl. at ¶2; Bandemer Decl. at ¶___.)[4]

---

[3] The Declaration of Ashley Galleher ("Galleher Decl.") is filed herewith as Exhibit 1 in support of Plaintiff's Motion (Dkt. 40-1.)
[4] Their declarations ("_____ Decl.") are filed herewith as Exhibits 2-9 in support of Plaintiff's Motion (Dkt. 40). Discovery as to Sydney Bandemer is still ongoing - her declaration in support

Defendants hired Gallaher as a server on or about July 2017 and she worked at Artisanal restaurant as a bartender and server until June 2018. (Galleher Decl. at ¶4.) Servers and bartenders are Tipped Employees. (Galleher Decl. at ¶5.) Artisanal also employs other Tipped Employees, including (1) hosts/hostesses, who greet customers and show them to their tables; (2) bussers, who fill water glasses, clear plates, and reset tables with clean plates/silverware for the next customers; and (3) food runners/expediters, who carry the food from the kitchen to the tables. (*Id.* at ¶6.)

### B. Artisanal Did not Provide Notice of Its Intent to Utilize Tip Credit

Artisanal paid servers and bartenders a sub-minimum hourly wage of $2.13 per hour. (Galleher Decl. Ex. 1; Brown Decl. Ex. 1; Daly Decl. Ex. 1; M. Smith Decl. Ex. 1; Stewart Decl. Ex. 1; Bandemer Decl. Ex. 1.) Artisanal supplemented this direct wage with their tips. *Id.* Artisanal did not provide Plaintiffs with any notice, written or oral, that it was paying them sub-minimum wage, that it was permitted to do so by law, or that it intended to treat their tips as satisfying part of Artisanal's minimum wage obligations. (Galleher Decl. at ¶20; Brown Decl. at ¶4; Daly Decl. at ¶4; M. Smith Decl. at ¶4; Stewart Decl. at ¶4; Bandemer Decl. at ¶__.)

### C. Mandatory Tip Pool

At the time she was hired, Galleher was told that she would be subject to a mandatory tip pool – her cash and credit card tips would be collected each night and then distributed amongst the members of the tip pool on each pay day. (Galleher Decl. ¶7; Answer at ¶22.) At the time of hire, Artisanal did not identify all the participants in the tip pool or explain how the tips would be redistributed, only that all bartenders and servers would fund the tip pool through their tips. (Galleher Decl. ¶7.) The distributions under the mandatory tip pool were a closely held "secret"

---

of the Motion and supporting paystubs will be filed by Plaintiff as soon as the information/documents are received.

of Artisanal; management refused to answer any of Galleher's and her coworkers' questions related to the tip pool or provide an accounting of the tips received and paid out through the tip pool. (*Id.*)

All hourly restaurant employees were paid bi-weekly on Fridays. (Galleher Decl. ¶8.) All servers and bartenders were required to contribute all of their tips to the mandatory tip pool – bartenders' and servers' cash and credit card tips were collected each night by management and held until the next payday when these tips were redistributed amongst all the participants of the tip pool, half as cash in an envelope and the other half in their paychecks. (Galleher Decl. ¶8; Answer at ¶22.) Galleher did not know for sure exactly who participated in the mandatory tip pool or how tips were redistributed – no one truly did. (Galleher Decl. ¶9.)

### C. Breakage Policy

All Artisanal employees, including Tipped Workers, were subject to a policy that held employees responsible for the breakage of any Artisanal property, including plates, glassware, etc., and required the employee to pay the cost to replace the property ("Breakage Policy"). (Galleher Decl. ¶13; Answer at ¶23.) This policy was unwritten, but universally applied to all employees. (*Id.*) The Breakage Policy was described to employees by management during training after initial hire and required employees to notify management of the breakage by identifying the item broken and the date broken on a paper log kept on clip board located in the "dish pit" area. (Galleher Decl. ¶13.) Defendants never told employees in advance what the replacement cost was for items in the restaurant; Defendants would deduct the amount it deemed appropriate from the employee's paycheck or cash tip-out from the tip pool. (*Id.* at 14.) The amount deducted for breakage fluctuated for the same items – no explanation was given for the discrepancies. (*Id.*)

5
Case 1:19-cv-00055-MOC-WCM   Document 41   Filed 12/01/20   Page 5 of 16

Employees, including Tipped Workers, were told by management that the failure to report breakage could result in termination of employment. (Galleher Decl. ¶15.) In fact, management notified employees that they would review security footage of the restaurant to determine who was responsible for breakage if the employee failed to report it. (*Id.*)

### D. Mandatory Uniform Rental Fee and Laundry Fee

All Tipped Workers are required to wear a standard uniform for each job classification ("Uniform Policy"). (Galleher Decl. ¶16.) Similar to the Breakage Policy, Defendant's Uniform Policy was unwritten and only generally described in basic terms to new employees at the time of hire. (*Id.*) Instead of permitting Tipped Workers to purchase their own uniforms or the clothing that comprises the uniform, Defendants' Uniform Policy requires Tipped Workers to pay a "rental fee" each pay period, which ranged from $2.80 to $6.80. (*Id.*) Again, Defendants never told employees what the rental fee was in advance of the deduction nor was there any explanation as to the variation in rental fees from one pay period to the next. (*Id.*) In addition, Defendants' Uniform Policy required Tipped Workers to pay a separate fee to dry clean their uniforms – this cleaning fee was randomly deducted from their paychecks and ranged from $2.80 to $10.00. (Galleher Decl. ¶17.) Defendants did not inform Tipped Workers in advance of taking the deduction what the amount of the deduction would be or why it fluctuated from paycheck to paycheck. (*Id.*)

## IV. DISCUSSION

### A. Summary Judgement Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing

6
Case 1:19-cv-00055-MOC-WCM   Document 41   Filed 12/01/20   Page 6 of 16

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once Plaintiffs have met this burden, Defendants must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (internal quotation omitted).

"Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment." *Lima v. MH & WH, LLC*, 2019 WL 2602142, at *8 (E.D.N.C. Mar. 8, 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party)). "In determining whether there is a genuine issue for trial, 'evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor.'" *Id.* (citing *Anderson*, 477 U.S. at 255). "Nevertheless, 'permissible inferences must still be within the range of reasonable probability . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.'" *Id.* (quoting *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)). Thus, summary judgment is proper where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005).

      **B.**      <u>**Plaintiffs' FLSA Minimum Wage Claim – Count I**</u>

           1.      <u>Legal Standard</u>

"The FLSA requires covered employers to pay 'nonexempt employees' a minimum wage for each hour worked, 29 U.S.C. § 206(a), but allows employers to pay less than the minimum

wage to employee who receive tips, 29 U.S.C. § 203(m)." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680 (D. Md. 2012). "Tipped employees . . . are required to receive at least minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a 'tip credit' to meet the $7.25 per hour minimum wage requirement." *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893 (D. Md. 2011). This "tip credit" allows employers to credit employees' tips to satisfy a portion of the employer's minimum wage obligation. *Id.*

Defendant Artisanal is a covered "employer" under the FLSA (Dkt. 1 at ¶¶13-15; Dkt. 10 at ¶¶13-15) and Plaintiff Ashley Galleher and the opt-in plaintiffs are covered "employees" under the FLSA (Dkt. 1 at ¶16; Dkt. 10 at ¶16). Artisanal paid Plaintiffs and other bartenders/servers $2.13 per hour and took a "tip credit" to offset its minimum wage obligation. (Galleher Decl. at ¶¶19-20, Ex. 1; Brown Decl. at ¶¶3-4, Ex 1; Daly Decl. at ¶¶3-4, Ex. 1; M. Smith Decl. at ¶¶3-4, Ex. 1; Stewart Decl. at ¶¶3-4, Ex. 1; Bandemer Decl. at ¶¶__, Ex. 1.) Count I of Plaintiffs' Complaint alleges that Artisanal improperly took a "tip credit" against its obligation to pay Plaintiffs the minimum wage rate of $7.25 per hour, and thus, violated the FLSA when it paid Plaintiffs only $2.13 per hour. (Dkt. 1 at ¶21.) Plaintiffs also allege that Artisanal unlawfully deducted from their paychecks for breakage, uniform rental and laundry fees, and other fees, which reduced their hourly wage below minimum wage. (*Id.* at ¶23.)

        2.    <u>Failure to Pay Minimum Wage - Tip Credit Violation</u>

An employer may not take a "tip credit" from an employee's hourly wages under § 203(m) unless (1) "such employee has been informed by the employer of the provisions of this subsection" and (2) "all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m); *Dorsey*, 88 F. Supp. 2d at 680-681. These two requirements are "'strictly construed,' and 'must be satisfied even if the employee received tips at least equivalent to the minimum wage.'"

*Dorsey*, 88 F. Supp. 2d at 681 (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011). An employer that fails to provide adequate notice to employees may not use employees' tips as a "tip credit" toward its minimum wage obligation:

> What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit.

*Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977).

The Department of Labor further clarified the "tip credit" notice requirements under Section 203(m), requiring an employer to provide the following information to a tipped employee before the employer may use the tip credit:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59.

As the employer, Artisanal, "bear[s] the burden of showing that [it] satisfied the FLSA's notice requirement." *See, e.g.*, *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). "Although an employer need not 'explain' the tip credit to an employee, Courts have widely interpreted section 203(m) to require at a minimum that an employer inform its employees of its intention to treat tips as satisfying part of the employer's minimum wage obligations." *Bernal v. Vankar Enters., Inc.*, 579 F. Supp. 2d 804, 809 (W.D. Tex. 2008) (collecting cases). In this case, there can be no dispute that Artisanal failed to provide adequate notice to Plaintiffs as required by

section 203(m) or the Department of Labor's regulation, 29 C.F.R. § 531.59. According to Galleher and the other opt-in Plaintiffs, Artisanal never provided them with any notice that it was paying them sub minimum wage, that it was permitted to do so by law, or that it intended to treat their tips as satisfying part of Artisanal minimum wage obligations. (Galleher Decl. at ¶20; Brown Decl. at ¶4; Daly Decl. at ¶4; M. Smith Decl. at ¶4; Stewart Decl. at ¶4; Bandemer Decl. at ¶__.)[5] Accordingly, Artisanal was not permitted to take any credit against its minimum wage obligation and owes Plaintiffs the difference between the hourly wage paid to Plaintiffs ($2.13) and the federal minimum wage that it should have paid ($7.25) for every hour worked.

### 3. Failure to Pay Minimum Wage – Unlawful Deductions

Artisanal had a policy and practice of deducting from Plaintiff's wages for breakage of plates, glasses and other dinnerware, as well as for uniform rental and laundry fees and a variety of errors made by servers/bartenders on their guests' checks. (Galleher Decl. at ¶¶21-22; Brown Decl. at ¶¶5-7; Daly Decl. at ¶¶5-6; Bengston Decl. at ¶¶4-5; M. Smith Decl. at ¶¶5-6; A. Smith Decl. at ¶¶4-5; Stewart Decl. at ¶¶5-6; Sferrazza Decl. at ¶¶4-5; Bandemer Decl. at ¶¶__.)[6] An employer that takes a tip credit against its minimum wage obligation cannot deduct from its employees' wages for breakage, uniforms, cash shortages, check errors, etc. because such deductions will reduce their wages below minimum wage and violate the FLSA. *See, e.g.*, *Dorsey*, 888 F. Supp. 2d at 670 n.7 ("Businesses are disqualified from taking a tip credit where they deduct[] losses due to cash register shortages and unpaid tabs from employees' paychecks or

---

[5] Sferrazza was employed as a hostess and A. Smith and Bengtson were employed as bussers – each was properly paid the minimum wage rate of $7.25 – Artisanal did not take a tip credit with respect to these Plaintiffs and they are not seeking summary judgment on this claim.

[6] Unlike the "tip credit" violation that did not apply to Sferrazza, A. Smith and Bengtson, who were paid minimum wage at $7.25, all of the Plaintiffs were subjected to unlawful deductions that brought them below minimum wage and all Plaintiffs seek summary judgment on this claim.

nightly tips"); *Sellers v. Keller Un. LLC*, 2019 WL 5788124, at *2 (D.S.C. Nov. 6, 2019) (deductions from tipped employees' paychecks for breakage brought their pay below minimum wage). As the Department of Labor makes very clear under "Typical Problems" in its "Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA)," which is intended to aid employees and employers alike in knowing and complying with the requirements of the Act, that:

> Where deductions for walk-outs, breakage, or cash register shortages reduce the employee's wages below the minimum wage, such deductions are illegal. <u>When an employer claims an FLSA 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions for walkouts, cash register shortages, breakage, cost of uniforms, etc., because any such deduction would reduce the tipped employee's wages below the minimum wage.</u>

www.dol.gov/agencies/whd/fact-sheets/15-flsa-tipped-employees (emphasis in original). Accordingly, Artisanal's deductions from Plaintiffs' wages brought their pay below the required minimum wage, and thus, violated the FLSA. Plaintiffs are entitled to summary judgment.

    **C.**    <u>**Plaintiffs' FLSA Overtime Claim – Count II**</u>

        1.    <u>Legal Standard</u>

The FLSA requires employers to compensate their employees for a workweek longer than forty hours on the basis of at least one and a half times the employee's regular hourly rate. 29 U.S.C. § 207(a)(1). Count II of Plaintiffs' Complaint alleges that Artisanal improperly calculated the overtime premium rate of pay (using the tip credit rate of $2.13/hr.), thereby violating the FLSA's overtime requirement.

In the Fourth Circuit, an employee who seeks to recover on an FLSA uncompensated overtime claim must prove: (1) that he or she worked overtime hours without compensation, showing the amount and extent of his or her overtime work as a matter of just and reasonable inference; and (2) that his or her employer suffered or permitted the uncompensated overtime

work, that is, that the employer had actual or constructive knowledge of the employee's overtime work. *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir.1986). Plaintiffs need establish only one hour of unpaid overtime to establish liability against Defendants in this matter and obtain partial summary judgment – anything else relates only to damages. *See Estrella v. P.R. Painting Corp*, 356 Fed. Appx. 495, 497 (2d Cir. 2009); *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 795 (N.D. Ill. 2011); *Lassen v. Hoyt Livery, Inc.*, 2016 WL 7165716, at *2 (D. Conn. Dec. 8, 2016).

### 2. Improper Calculation of Overtime Premium

The FLSA requires employers to pay overtime to each employee who works more than 40 hours in a week. 29 U.S.C. § 207(a). This overtime must be at a rate that is at least 1.5 times the employee's regular rate. *Id.* Plaintiffs worked overtime hours, as indicated on their pay stubs. (*See* Galleher Decl. Ex. 1; Brown Decl. Ex 1; Daly Decl. Ex. 1; M. Smith Decl. Ex. 1; M. Smith Decl. Ex. 1; Stewart Decl. Ex. 1.)[7] Artisanal paid Plaintiffs and other bartender/servers at the overtime premium rate of $3.20, which was predicated on a base rate of $2.13 per hour, the "tip credit" rate. *Id.* Plaintiffs assert that Artisanal was not permitted to utilize the tip credit to pay them only $2.13 per hour instead of the federal minimum wage of $7.25 per hour. *See* discussion *supra*. As a result, Artisanal should have calculated the overtime premium using the base rate of $7.25, and thus, failed to properly pay Plaintiffs overtime for all overtime hours they worked in violation of the FLSA.

Even assuming for sake of argument that the "tip credit" was available to Artisanal to satisfy its minimum wage obligation, it still failed to properly calculate the overtime premium rate.

---

[7] Sferrazza and A. Smith did not work overtime. Bengtson were properly paid the minimum wage rate of $7.25 and the overtime premium rate of $10.88 and are not seeking summary judgment on this claim. All other Plaintiffs worked overtime and were compensated at the incorrect overtime premium rate.

A tipped employee's regular rate includes both the direct wage and any tip credit taken by the employer. 29 C.F.R. § 531.60. Therefore, where the employer takes the tip credit, <u>overtime is calculated on the full minimum wage</u>. *Id.*[8] The required overtime rate is calculated as follows:

| | |
|---|---|
| Applicable Minimum Wage | $7.25 |
| Multiply $7.25 by Time and a Half | $10.88 |
| Subtract the Maximum Tip Credit of $5.12 | $5.76 |

Here, Artisanal used the tip credit base rate of $2.13 per hour to calculate Plaintiffs' overtime premium rate of pay – it improperly paid overtime for all overtime hours Plaintiffs worked each workweek by paying $3.20 per overtime hour instead of $5.76. Plaintiffs are entitled to summary judgment on Count II of their Complaint.

### D. Plaintiffs Are Entitled To Liquidated Damages Under The FLSA

Plaintiffs move the Court for partial summary judgment against Defendant Artisanal with respect to liquidated damages based on Artisanal's minimum wage and overtime violations of the FLSA. An employer who violates the minimum wage provisions of the FLSA "shall be liable to the . . . employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Court has discretion, however, to deny or limit an award of liquidated damages where the employer shows that, despite the failure to pay appropriate wages, the employer acted in "good faith" and had "reasonable grounds" for believing that the acts or omissions giving rise to the failure did not violate the FLSA. 29 U.S.C. § 260. The employer bears a "***plain and substantial burden*** of persuading the court by proof that his failure to obey the statute was both ***in good faith and predicated upon such***

---

[8] "Overtime Problems" section of "Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act," which notes "Where the employer takes the tip credit, overtime is calculated on the full minimum wage, **not** the lower direct (or cash) wage payment." www.dol.gov/agencies/whd/fact-sheets/15-flsa-tipped-employees (emphasis in original).

***reasonable grounds*** that it would be unfair to impose upon him more than a compensatory verdict." *Brinkley–Obu v. Hughes Training*, 36 F.3d 336, 357 (4th Cir. 1994) (emphasis added) (quotation omitted).

Liquidated damages are the "norm" in cases in which the FLSA is violated. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir.1997). "Liquidated damages 'are considered compensatory rather than punitive in nature,' . . . and constitute 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" *Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 548 (4th Cir. 1998) (quoting *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (citing *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 707 (1945)).

Artisanal' s violations of the FLSA were not in good faith and it cannot satisfy its "plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Accordingly, Plaintiffs are entitled to liquidated damages for Defendants violations of the FLSA.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion and enter an Order with the terms set forth in their proposed Order.

Respectfully submitted,

/s/ Craig L. Leis
Philip J. Gibbons, Jr., NCSB #50276
Craig L. Leis, NCSB #48582
**GIBBONS LEIS, PLLC**
14045 Ballantyne Corporate Place, Ste. 325
Charlotte, NC 28277
Telephone:    704-612-0038
Email: phil@gibbonsleis.com

craig@gibbonsleis.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

This is to certify that on December 1, 2020, the undersigned counsel filed the foregoing pleading using the Court's CM/ECF system that will send notification of this filing to all counsel of record.

/s/ Craig L. Leis
Craig L. Leis, NCSB #48582