UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-55-MOC-WCM

| | | |
|---|---|---|
| ASHLEY GALLEHER, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| ARTISANAL, LLC and BILL GREENE, | ) ) | |
| Defendants. | ) ) | |
| ——————————————— | ) | |

**THIS MATTER** comes before the Court on a Partial Motion for Summary Judgment by

Ashley Galleher and the opt-in plaintiffs, Jessica Brown, Lynn Daly, Macy Smith, Liza Stewart,

Sydney Bandemer, Erin Sferrazza, Adam Smith, and Brendan Bengtson (hereafter collectively

"Plaintiffs"). (Doc. No. 40).

I.    **Background**

    A.  **Procedural Background**

    Plaintiff Ashley Galleher filed her Complaint ("Complaint") on February 18, 2019. (Doc.

No. 1). Plaintiff's Complaint alleges minimum wage, overtime, and unpaid wage claims against

Defendants Artisanal, LLC ("Artisanal") and Bill Greene ("Greene") individually in violation of

the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") and the North Carolina Wage

Payment Act, N.C. GEN. STAT. § 95.25.1 et seq. ("NCWHA").[1] Defendants filed their Answer on

---

[1] Plaintiffs have noted that they will be dismissing the individual Defendant, Bill Greene, from the lawsuit. In addition, Plaintiffs are only pursuing Counts I and II of their Complaint under the FLSA and have noted that they will be dismissing Count III of their Complaint alleging claims under the NCWHA.

June 14, 2019. (Doc. No. 10). On July 31, 2019, Galleher moved the Court to conditionally certify a FLSA collective action and facilitate notice to putative collective members. (Doc. No. 14). The Court granted Galleher's motion and conditionally certified the following collective class:

> All current and former employees of Defendants who were employed at the Artisanal restaurant in Banner Elk, North Carolina as servers, bussers, hostesses, and bartenders, or their functional equivalents, anytime during the three-year period preceding the filing of the Complaint in this action.

(Doc. No. 18). Following conditional certification, eight additional Tipped Workers opted into this lawsuit.

Plaintiffs, who were servers, bussers, hostesses, food expediters, and bartenders at Artisanal and received tips as part of their compensation ("Tipped Workers"), seek to recover unpaid minimum wages and overtime under the FLSA. (Doc. No. 1, Counts I and II). Plaintiffs assert that Artisanal had a policy and practice of failing to pay Plaintiffs minimum wage for all hours worked because Artisanal improperly used the federal "tip credit" to supplement its sub-minimum wage rate of $2.13. Plaintiffs allege that Artisanal could not utilize the tip credit because (1) it failed to provide adequate notice to Plaintiffs of the intention to use a portion of Plaintiffs' tips toward satisfying the federal minimum wage as required by section 203(m); and (2) it took improper deductions from Plaintiffs' minimum wage for breakage, laundry, uniforms, and other fees/charges. (Doc. No. 1 at Count I). Plaintiffs allege that Artisanal's improper payment of $2.13 per hour rather than the federal minimum wage of $7.25 results in minimum wage violations and an underpayment of $5.12 per hour for all hours worked by Tipped Employees. In addition, Plaintiffs also allege that Artisanal did not properly calculate Tipped Workers' regular rate/overtime for all hours worked over 40 in a workweek, resulting in overtime violations of the FLSA. (Doc. No. 1).

2

Plaintiffs now move for partial summary judgment against Artisanal as to their federal FLSA minimum wage and overtime claims (Counts I and II) on the issue of liability, and Plaintiffs also move for liquidated damages regarding those claims.

### B. Factual Background

<u>Defendant Artisanal and its Tipped Workers</u>

Defendant Artisanal, LLC ("Artisanal") owns and operates a fine dining establishment in Banner Elk, North Carolina. Artisanal's restaurant in Banner Elk is a seasonal establishment, operating from May through the end of October each year. (Doc. No. 40-1, ("Galleher Decl." at ¶ 3). Plaintiff Ashley Galleher worked as a bartender and server for Artisanal for approximately one year. (Galleher Decl. at ¶ 4). Artisanal employs an identifiable group of employees who received gratuities ("tips") as part of their total compensation, including Galleher, who are referred to herein as "Tipped Workers." (<u>Id.</u> at ¶ 5). The other opt-in plaintiffs who joined Galleher's collective action were also Tipped Workers at Artisanal: Jessica Brown (server), Lynn Daly (bartender), Macy Smith (bartender), Liza Stewart (server), Erin Sferrazza (hostess), Adam Smith (busser), Brenden Bengtson (busser), and Sydney Bandemer (server). (Doc. No. 40-2, ("Brown Decl.") at ¶ 2; Doc. No. 40-3, ("Daly Decl.") at ¶ 2; Doc. No. 40-6, ("Bengston Decl.") at ¶ 2; Doc. No. 40-4 ("M. Smith Decl.") at ¶ 2; Doc. No. 40-8, ("A. Smith Decl.") at ¶ 2; Doc. No. 40-5, ("Stewart Decl.") at ¶ 2; Doc. No. 40-7, ("Sferrazza Decl.") at ¶ 2; Doc. No. 45-2, ("Bandemer Decl.") at ¶ 2).

Defendants hired Gallaher as a server on or about July 2017, and she worked at Artisanal as a bartender and server until June 2018. (Galleher Decl. at ¶ 4). Servers and bartenders are Tipped Employees. (Galleher Decl. at ¶ 5). Artisanal also employs other Tipped Employees, including (1) hosts/hostesses, who greet customers and show them to their tables; (2) bussers,

3

who fill water glasses, clear plates, and reset tables with clean plates/silverware for the next customers; and (3) food runners/expediters, who carry the food from the kitchen to the tables. (Id. at ¶ 6).

### Artisanal and Notice of its Intent to Utilize Tip Credit

Artisanal paid servers and bartenders a sub-minimum hourly wage of $2.13 per hour. (Galleher Decl. Ex. 1; Brown Decl. Ex. 1; Daly Decl. Ex. 1; M. Smith Decl. Ex. 1; Stewart Decl. Ex. 1; Bandemer Decl. Ex. 1). Artisanal supplemented this direct wage with their tips. (Id.). Artisanal did not provide Plaintiffs with any notice, written or oral, that it was paying them sub-minimum wage, that it was permitted to do so by law, or that it intended to treat their tips as satisfying part of Artisanal's minimum wage obligations. (Galleher Decl. at ¶ 20; Brown Decl. at ¶ 4; Daly Decl. at ¶ 4; M. Smith Decl. at ¶ 4; Stewart Decl. at ¶ 4; Bandemer Decl. at ¶¶ 3-4).

### Mandatory Tip Pool

When she was hired, Galleher was told that she would be subject to a mandatory tip pool – her cash and credit card tips would be collected each night and then distributed among the members of the tip pool on each pay day. (Galleher Decl. at ¶ 7; Answer at ¶ 22). At the time of hire, Artisanal did not identify all the participants in the tip pool or explain how the tips would be redistributed, only that all bartenders and servers would fund the tip pool through their tips. (Galleher Decl. at ¶ 7). The distributions under the mandatory tip pool were a closely held "secret" of Artisanal; Galleher alleges that management refused to answer any of Galleher's and her coworkers' questions related to the tip pool or provide an accounting of the tips received and paid out through the tip pool. (Id.).

All hourly restaurant employees were paid bi-weekly on Fridays. (Galleher Decl. at ¶ 8). All servers and bartenders were required to contribute all of their tips to the mandatory tip pool

4

– bartenders' and servers' cash and credit card tips were collected each night by management and held until the next payday when these tips were redistributed among all the participants of the tip pool, half as cash in an envelope and the other half in their paychecks. (Galleher Decl. at ¶ 8; Answer at ¶ 22). Galleher did not know for sure exactly who participated in the mandatory tip pool or how tips were redistributed. (Galleher Decl. at ¶ 9).

Breakage Policy

All Artisanal employees, including Tipped Workers, were subject to a policy that held employees responsible for the breakage of any Artisanal property, including plates, glassware, etc., and required the employee to pay the cost to replace the property ("Breakage Policy"). (Galleher Decl. at ¶ 13; Answer at ¶ 23). This policy was unwritten, but universally applied to all employees. (Id.). The Breakage Policy was described to employees by management during training after initial hire and required employees to notify management of the breakage by identifying the item broken and the date broken on a paper log kept on a clip board located in the "dish pit" area. (Galleher Decl. at ¶ 13). Defendants never told employees in advance what the replacement cost was for items in the restaurant; Defendants would deduct the amount it deemed appropriate from the employee's paycheck or cash tip-out from the tip pool. (Id. at ¶ 14). The amount deducted for breakage fluctuated for the same items – no explanation was given for the discrepancies. (Id.).

Management told employees, including Tipped Workers, that the failure to report breakage could result in termination of employment. (Galleher Decl. at ¶ 15). In fact, management notified employees that they would review security footage of the restaurant to determine who was responsible for breakage if the employee failed to report it. (Id.).

Mandatory Uniform Rental Fee and Laundry Fee

5

All Tipped Workers are required to wear a standard uniform for each job classification ("Uniform Policy"). (Galleher Decl. at ¶ 16). Similar to the Breakage Policy, Defendant's Uniform Policy was unwritten and only generally described in basic terms to new employees at the time of hire. (Id.). Instead of permitting Tipped Workers to purchase their own uniforms or the clothing that comprises the uniform, Defendants' Uniform Policy requires Tipped Workers to pay a "rental fee" each pay period, which ranged from $2.80 to $6.80. (Id.). Again, Defendants never told employees what the rental fee was in advance of the deduction, nor was there any explanation as to the variation in rental fees from one pay period to the next. (Id.). In addition, Defendants' Uniform Policy required Tipped Workers to pay a separate fee to dry clean their uniforms – this cleaning fee was randomly deducted from their paychecks and ranged from $2.80 to $10.00. (Galleher Decl. at ¶ 17). Defendants did not inform Tipped Workers in advance of taking the deduction what the amount of the deduction would be or why it fluctuated from paycheck to paycheck. (Id.).

## II.    STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is

6

no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. (Id. at 324). Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. (Id.). Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a material factual dispute.

### B. Fair Labor Standards Act

"The FLSA requires covered employers to pay 'nonexempt employees' a minimum wage for each hour worked, 29 U.S.C. § 206(a), but allows employers to pay less than the minimum wage to employees who receive tips, 29 U.S.C. § 203(m)." Dorsey v. TGT Consulting, LLC, 888

7

F. Supp. 2d 670, 680 (D. Md. 2012). "Tipped employees . . . are required to receive at least minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a 'tip credit' to meet the $7.25 per hour minimum wage requirement." Gionfriddo v. Jason Zink, LLC, 769 F. Supp. 2d 880, 893 (D. Md. 2011). This "tip credit" allows employers to credit employees' tips to satisfy a portion of the employer's minimum wage obligation. (Id.).

Defendant Artisanal is a covered "employer" under the FLSA (Doc. No. 1 at ¶¶ 13–15; Doc. No. 10 at ¶¶ 13–15) and Plaintiff Galleher and the opt-in plaintiffs are covered "employees" under the FLSA (Doc. No. 1 at ¶ 16; Doc. No. 10 at ¶ 16). Artisanal paid Plaintiffs and other bartenders/servers $2.13 per hour and took a "tip credit" to offset its minimum wage obligation. (Galleher Decl. at ¶¶ 19–20, Ex. 1; Brown Decl. at ¶¶ 3–4, Ex. 1; Daly Decl. at ¶¶ 3–4, Ex. 1; M. Smith Decl. at ¶¶ 3–4, Ex. 1; Stewart Decl. at ¶¶ 3–4, Ex. 1; Bandemer Decl. at ¶¶ 3–4, Ex. 1). Count I of Plaintiffs' Complaint alleges that Artisanal improperly took a "tip credit" against its obligation to pay Plaintiffs the minimum wage rate of $7.25 per hour and, thus, violated the FLSA when it paid Plaintiffs only $2.13 per hour. (Doc. No. 1 at ¶ 21). Plaintiffs also allege that Artisanal unlawfully deducted from their paychecks for breakage, uniform rental and laundry fees, and other fees, which reduced their hourly wage below minimum wage. (Id. at ¶ 23).

Next, the FLSA requires employers to compensate their employees for a workweek longer than forty hours on the basis of at least one and a half times the employee's regular hourly rate. 29 U.S.C. § 207(a)(1). Count II of Plaintiffs' Complaint alleges that Artisanal improperly calculated the overtime premium rate of pay (using the tip credit rate of $2.13/hr.), thereby violating the FLSA's overtime requirement.

In the Fourth Circuit, an employee who seeks to recover on an FLSA uncompensated overtime claim must prove: (1) that he or she worked overtime hours without compensation,

8

showing the amount and extent of his or her overtime work as a matter of just and reasonable inference; and (2) that his or her employer suffered or permitted the uncompensated overtime work, that is, that the employer had actual or constructive knowledge of the employee's overtime work. Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986). Plaintiffs need establish only one hour of unpaid overtime to establish liability against Defendants in this matter and obtain partial summary judgment – anything else relates only to damages. See Estrella v. P.R. Painting Corp., 356 Fed. Appx. 495, 497 (2d Cir. 2009); Villareal v. El Chile, Inc., 776 F. Supp. 2d 778, 795 (N.D. Ill. 2011).

III.    **DISCUSSION**

A. **Plaintiffs' Minimum Wage Claim**

a. **Tip Credit Violation**

An employer may not take a "tip credit" from an employee's hourly wages under § 203(m) unless (1) "such employee has been informed by the employer of the provisions of this subsection" and (2) "all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m); Dorsey, 88 F. Supp. 2d at 680–81. These two requirements are "'strictly construed,' and 'must be satisfied even if the employee received tips at least equivalent to the minimum wage.'" Dorsey, 88 F. Supp. 2d at 681 (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011)). An employer that fails to provide adequate notice to employees may not use employees' tips as a "tip credit" toward its minimum wage obligation:

> What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit.

Richard v. Marriott Corp., 549 F.2d 303, 305 (4th Cir. 1977).

As the employer, Artisanal, "bear[s] the burden of showing that [it] satisfied the FLSA's notice requirement." See, e.g., Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). "Although an employer need not 'explain' the tip credit to an employee, courts have widely interpreted section 203(m) to require at a minimum that an employer inform its employees of its intention to treat tips as satisfying part of the employer's minimum wage obligations." Bernal v. Vankar Enters., Inc., 579 F. Supp. 2d 804, 809 (W.D. Tex. 2008) (collecting cases); see also Martin v. Tango's Rest. Inc., 969 F.2d 1319, 1322–23 (1st Cir. 1992) (notice provision requires "at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations"); Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 298 (6th Cir. 1998) ("[A]n employer must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation"); Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994) ("If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken . . .").

In this case, Artisanal failed to provide adequate notice to Plaintiffs as required by section 203(m) or the Department of Labor's regulation, 29 C.F.R. § 531.59. According to Galleher and the other opt-in Plaintiffs, Artisanal never provided them with any notice that it was paying them sub-minimum wage, that it was permitted to do so by law, or that it intended to treat their tips as satisfying part of Artisanal minimum wage obligations. (Galleher Decl. at ¶ 20; Brown Decl. at ¶ 4; Daly Decl. at ¶ 4; M. Smith Decl. at ¶ 4; Stewart Decl. at ¶ 4; Bandemer Decl. at ¶¶ 3–4).[2]

---

[2] Sferrazza was employed as a hostess and A. Smith and Bengtson were employed as bussers – each was properly paid the minimum wage rate of $7.25 – Artisanal did not take a tip credit with respect to these Plaintiffs and they are not seeking summary judgment on this claim.

Accordingly, Artisanal was not permitted to take any credit against its minimum wage obligation and owes Plaintiffs the difference between the hourly wage paid to Plaintiffs ($2.13) and the federal minimum wage that it should have paid ($7.25) for every hour worked.

Defendant's wrongly suggest that Section 203(m)'s notice requirement is easily satisfied through notice of an employee's hourly wage and prominent posting of the Department of Labor's FLSA poster. (Doc. No. 43-3 at 4). The proper standard of notice is set out in the U.S. Department of Labor's regulation interpreting Section 203(m)—29 C.F.R. § 531.59. See, e.g., Driver v. AppleIllinois, LLC, 917 F. Supp. 2d 793, 801–02 (N.D. Ill. 2013). Courts that have held that 29 C.F.R. § 531.59 is entitled to deference. (Id.). In rejecting a challenge to § 531.59, one district court compared a side by side of the regulation and § 203(m) and concluded that the regulation's five requirements are "derived directly from the statutory text . . . In other words, . . . the final rule does not require employers to do anything other than what they were already obligated to do under [§ 203(m)], which is 'inform employees of the provisions of this subsection.'" Natl. Rest. Assn. v. Solis, 870 F. Supp. 2d 42, 54–55 (D.D.C. 2012).

Under 29 C.F.R. § 531.59, an employer must provide the following information to a tipped employee before the employer may use the tip credit:

> (1) the cash wage the employee will receive; (2) the additional amount on account of tips on which the credit is claimed; (3) that the additional amount may not exceed the tips actually received; (4) that the employer cannot take the tip credit unless the employee has been informed of § 203(m); and (5) that all tips received by the employee must be retained by that employee, except tip pooling among tipped employees is permitted.

Driver, 917 F. Supp. 2d at 802 n.6; 29 C.F.R. § 531.59.

The record does not create a dispute of material fact regarding whether Defendant provided all of the required notice under § 531.59. Rather, the evidence clearly leads to the

11

conclusion that Defendant failed to provide all aspects of the required notice. Anita Greene, Defendant's General Manager, was the person responsible for interviewing and hiring new servers, bartenders, and other tipped employees. (Doc. No. 45-1, ("Greene Dep.") 28:1–29:1). Greene acknowledges that she has no memory of her conversations with Plaintiffs during the interview process and was not involved in their training. (Greene Dep. 60:7–63:19). Greene further acknowledges that she does nothing proactive to provide the required notice under the statute/regulation at the time of hire — 70% of the interviews with potential hires contain no discussion of compensation at all. (Greene Dep. 54:19–55:7). The other 30% of interviews might contain limited discussion of compensation, and only in response to questions posed by the prospective hire. (Greene Dep. 55:4–24, 58:15–60:6). During this limited discussion, Greene might mention their hourly wage ($2.13/hr) or that they would participate in a tip pool, but the prospective employees were often focused on income potential with tips. (Greene Dep. 55:4–24, 58:15–60:6). This is all consistent with Plaintiffs' experience in this case, who did not discuss compensation – at all – with Mrs. Greene during their interviews. (Doc. Nos. 45-2 at ¶ 3; 45-3 at ¶¶ 3–4; 45-4 at ¶ 3; 45-5 at ¶ 3; 45-6 at ¶ 3; 45-7 at ¶ 3; 45-8 at ¶ 3; 45-9 at ¶ 3).

The onboarding process – filling out the new hire paperwork and job training – also did not provide notice of the tip credit. (Greene Dep. 50:2–54:21, 68:10–69:2; Doc. Nos. 45-2 at ¶ 4; 45-3 at ¶ 4; 45-4 at ¶ 4; 45-5 at ¶ 4; 45-6 at ¶ 4; 45-7 at ¶ 4; 45-8 at ¶ 4; 45-9 at ¶ 4). Moreover, at no time after the interview process (and only in limited context with 30% of potential new hires) did Greene or Artisanal managers discuss hourly wages/tips with the tipped employees. (Green Dep. 65:10–19; Doc. Nos. 45-2 at ¶¶ 5–8; 45-3 at ¶¶ 5–8; 45-4 at ¶¶ 5–8; 45-5 at ¶¶ 5–8; 45-6 at ¶¶ 5–8; 45-7 at ¶¶ 5–8; 45-8 at ¶¶ 5–8; 45-9 at ¶¶ 5–8). Section 203(m) places an affirmative obligation on Artisanal to inform Plaintiffs of the provisions contained in § 203(m).

12

Dorsey, 888 F. Supp. at 681 (citing Pedigo v. Austin Rumba, Inc., 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010)). Artisanal provided no notice to Plaintiffs of the tip credit, their hourly wage being sub minimum wage, or Artisanal's intent to make up the minimum wage gap with the tips Plaintiffs received. (Doc. No. 45-2 at ¶¶ 5–8; Doc. No. 45-3 at ¶¶ 5–8; Doc. 45-4 at ¶¶ 5–8; 45-5 at ¶¶ 5–8; 45-6 at ¶¶ 5–8; 45-7 at ¶¶ 5–8; 45-8 at ¶¶ 5–8; 45-9 at ¶¶ 5–8). Artisanal's efforts fall well short of what is required under Section 203(m) and the Department of Labor's regulation interpreting the statutory notice requirement, 29 C.F.R. § 531.59.

Defendant argues, however, that it provided sufficient notice under § 203(m) through (1) posting of a North Carolina Department of Labor poster; (2) the "New Hire Guide" provided to Plaintiffs that states their hourly rate ($2.13/hr) "plus tips"; (3) Plaintiffs paystubs, which show their hourly rate; and (4) the "Artisanal Tip Format" that explains how the tips collected from servers and bartenders were to be redistributed under the "tip pool." (Doc. No. 43-3 at 3-4). In support of its position, Defendant cites an unreported 2010 decision out of the Northern District of Texas, Rudy v. Consolidated Restaurant Companies, which held that "[e]xplaining that an employee would make $2.15/hour plus tips and that they would participate in a tip pool has been determined to be sufficient notice under Section 203(m)." (Doc. No. 43-3 at 4) (quoting Rudy, 2010 WL 3565418, at *9 (N.D. Tex. Aug. 18, 2010) (citing Kilgore v. Outback Steakhouse, 160 F.3d 294 (6th Cir. 1998)). Rudy is an outlier that is distinguishable.

First, Rudy was decided before the Department of Labor finalized 29 C.F.R. § 531.59, its regulation interpreting § 203(m)'s notice requirement, which is the applicable legal standard at the time of Plaintiffs' employment. See Driver, 917 F. Supp. 2d at 801–02. More importantly, the Rudy court's suggestion that an employer can meet its notice obligation under Section 203(m) by simply providing employees with notice of their hourly wage and participation in a tip pool is

13

wholly inconsistent with plain language of Section 203(m) itself. Moreover, the court in <u>Rudy</u> found significantly more evidence of the employer providing notice in reaching its conclusion that the employers satisfied Section 203(m). In <u>Rudy</u>, the district court noted that the employer's handbook, given to all employees at the time of hire, provided express notice to employees of its intent to take the tip credit and an explanation of the same:

> for waiters and waitresses, we take a tip credit against minimum wage. The amount of this credit is the maximum allowable by federal or state law, whichever is more favorable to the Associate.
>
> You must average at least minimum wage for total hours worked. (Your hourly rate plus your tips must meet or exceed the full minimum wage).

<u>Rudy</u>, 2010 WL 3565418, at *9.

Furthermore, <u>Kilgore v. Outback Steakhouse</u>, the Sixth Circuit decision cited as support by <u>Rudy</u>, rejected the argument that the employer must "explain" the tip credit, but found that the "employer's written tip policy which 'fully quoted [§ 203(m)]' and stated that 'tips will be used as a credit against the minimum wage as permitted by federal and/or state law,' was sufficient." <u>Driver</u>, 917 F. Supp. 2d at 801 (discussing holding in <u>Kilgore</u>). Regardless, courts almost universally reject the notice standard in <u>Rudy</u>, including courts in the Fourth Circuit, by requiring an employer to meet the notice mandated by the DOL in § 531.59, or at minimum, inform employees of its intention to treat tips as satisfying part of the employer's minimum wage obligations.[3]

---

[3] <u>See, e.g.</u>, <u>Martin</u>, 969 F.2d at 1322–23; <u>Kilgore</u>, 160 F.3d at 298; <u>Reich</u>, 28 F.3d at 403; <u>Dorsey</u>, 888 F. Supp. 2d at 681; <u>Mould v. NJG Food Serv. Inc.</u>, 37 F. Supp. 3d 762, 769–70 (D. Md. 2014); <u>Driver</u>, 917 F. Supp. 2d at 803; <u>Bernal</u>, 579 F. Supp. 2d at 809 (collecting cases); <u>Perez v. Prime Steak House Rest. Corp.</u>, 939 F. Supp. 2d 132, 138–39 (D.P.R. 2013); <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011); <u>Reich v. Chez Robert, Inc.</u>, 821 F. Supp. 967, 977 (D.N.J. 1993); <u>Acosta v. Mezcal, Inc.</u>, 2019 WL 2550660, at *8 (D. Md. June 20, 2019); <u>Prusin v. Canton's Pearls, LLC</u>, 2017 WL 5126156, at *5 (D. Md. Nov. 6,

Furthermore, Artisanal wrongly suggests that it provided adequate notice to Plaintiffs because "Artisanal prominently displayed a poster from the North Carolina Department of Labor clearly displaying the current minimum wage and explaining how the tip credit worked." (Doc. No. 43-3 at 5). In support, Artisanal cites Pellon v. Business Representation Int'l, Inc., 528 F. Supp. 2d 1306, 1310–11 (S.D. Fla. 2007) – another decision prior to the DOL's finalization of § 531.59 – which Artisanal contends "held that section 3(m)'s requirement was met through verbal notice that plaintiff would be paid $2.13 plus tips, combined with the prominent display of FLSA poster explaining the tip credit." (Doc. No. 43-3 at 4–5). Artisanal's argument fails for numerous reasons.

First, there is no evidence in the record that Artisanal displayed a North Carolina Department of Labor ("NCDOL") poster that "explain[ed] how the tip credit worked" as Artisanal claims. (Doc. No. 43-3 at 4). Anita Greene's declaration testimony states that "posters from the North Carolina Department of Labor, substantially similar to the one attached as Exhibit A, have been prominently and clearly posted in two locations. . ." (Doc. No. 43 at ¶ 3). However, Exhibit A is the North Carolina Department of Labor, Occupational Safety and Health Division's "Notice to Employees" about their rights and responsibilities. (Doc. No. 43-1). Nowhere in Exhibit A does it "explain how the tip credit works" or otherwise inform Plaintiffs of any information related to the tip credit. (Id.). Artisanal has the burden to show eligibility for the tip credit. Its "failure to offer evidence of the content of the notice they claim to have provided is fatal." Acosta, 2019 WL 2550660, at *8; Prusin, 2017 WL 5126156, at *5 ("Defendants have not identified any relevant language (or for that matter any language at all) on these posters that

2017); Hernandez v. Jrpac Inc., 2016 WL 3248493, at *24 (S.D.N.Y. June 9, 2016).

would satisfy the tip credit notice requirement").

Moreover, Mrs. Greene is definitive in her testimony – Artisanal displayed posters from the North Carolina Department of Labor, not the U.S. Department of Labor – a fatal flaw under Pellon, which in Artisanal's own words requires the "prominent display of FLSA posters." (See Doc. No. 43-3 at 4). 29 C.F.R. 516.4 provides in pertinent part:

> Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

The FLSA requires Artisanal to display federal posters informing employees of their rights under the FLSA, but Artisanal failed to do so and only displayed a poster related to North Carolina law. (Id.; Doc. No. 43 at ¶ 3).

Finally, even if Artisanal had displayed the proper FLSA poster explaining the federal tip credit, courts have almost universally rejected the argument that such a generic government poster can satisfy the notice obligations under § 203(m). Courts of Appeals have uniformly "require[d] at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." Copantitla, 788 F. Supp. at 287–88 (citing Martin, 969 F.2d at 1322; Kilgore, 160 F.3d at 298; Reich, 28 F.3d at 403). "A generic government poster could inform employees that minimum wage obligations exist but could not possibly inform employees that their employers' intend to take the tip credit with respect to their salary." (Id. at 289–90) (holding defendants' evidence that it "posted notices about the minimum wage laws" is "insufficient to create a triable issue of fact as to whether the notice requirement has been satisfied, as it compels only the conclusion that the tipped employees knew they were tipped and that minimum wage obligations exist"); Driver, F. Supp. 2d at 803 (posters did not satisfy notice

16

obligations under § 203(m)); <u>Hernandez</u>, 2016 WL 3248493, at *24 (same); <u>Prusin</u>, 2017 WL 5126156, at *5 (same). "As the USDOL observed in issuing 29 C.F.R. § 531.59(b), 'the FLSA poster (Publication 1088) provides only a limited description of the tip credit rules and recognizes that 'other conditions must also be met'" to satisfy § 203(m)'s notice obligations. <u>Driver</u>, F. Supp. 2d at 802–03.

Accordingly, Artisanal failed to provide adequate notice under § 203(m) by allegedly posting the NCDOL poster (or any poster) in the restaurant.

Next, Defendant's "New Hire Guide," which Plaintiffs initialed at the time of hire, identifies the employee's hourly wage and that tips will be included in their total compensation. (<u>See</u> Doc. No. 43-2 at 3). Plaintiffs' paystubs also specify their hourly wage and the portion of their tips paid out through the tip pool that was included in their paychecks. (<u>See</u>, <u>e.g.</u>, Doc. No. 40-5 at 6). Courts have universally held that paystubs and other documents that merely provide an employee notice of their compensation – their specific hourly wage "plus tips" – cannot satisfy Section 203(m)'s notice requirement as a matter of law. <u>See</u>, <u>e.g.</u>, <u>Mould v. NJG Food Serv. Inc.</u>, 37 F. Supp. 3d 762, 769–70 (D. Md. 2014) (holding the plaintiffs' paychecks, which provide notice of their hourly wage and tips, failed to meet the notice requirement of § 203(m)); <u>Dorsey</u>, 888 F. Supp. 2d at 682 (holding paystubs/earnings statements did not satisfy notice obligation because they did not inform "employees that their tipped wage was subminimum and that a certain percentage of their tips were being applied to meet federal minimum wage requirements"); <u>Bernal</u>, 579 F. Supp. 2d at 810 (granting summary judgment for plaintiffs because, in part, "the Court cannot say that any reasonable juror would find that Defendants disclosed their intention [to take the tip credit] on the face of the pay stubs or reprinted checks"); <u>Reich v. Chez Robert, Inc.</u>, 821 F. Supp. 967, 977 (D.N.J. 1993) (noting an employer does not meet its obligation to

"inform" under section 3(m) when it tells its tipped employees that they will be paid a specific wage but does not explain that the wage is below minimum wage and that it is permitted by law based on the employees' tips).

Finally, Artisanal argues that it provided notice sufficient to satisfy § 203(m)'s notice requirement through providing its tip pool policy to employees. (Doc. No. 43-3 at 4). Artisanal's tip pool policy, the "Artisanal Tip Format," explains how tips collected from servers and bartenders were to be redistributed under the "tip pool" and acts as an employee authorization/acknowledgment. (See, e.g., Doc. No. 43-2 at 1). For the reasons discussed above, courts routinely reject "tip pool" policies and agreements as providing sufficient notice under § 203(m). See, e.g., Driver, 917 F. Supp. 2d at 803. For example, in Driver v. AppleIllinois, the employer required employees to sign a tip-sharing agreement stating, "I understand that if my regular hourly wage is less than standard minimum wage, then part of the tips I receive may be used by my employer [to] satisfy minimum wage obligations." (Id.) (emphasis in original, added by court). The district court held that this tip-sharing agreement failed to comply with § 203(m)'s notice obligations because:

> [i]t does not inform the employee of his wage rate or the fact his wage rate will actually be lower than the minimum wage; it does not state how much of the employee's tips will be used to make up the minimum wage, or even that AppleIllinois intends to use the tip credit, only that it "may" use "part of the tips." It does not state, as § 203(m) provides, that the tipped employee will retain all tips except for tip pooling.

(Id.).

In this case, Artisanal's tip pool policy – the "Artisanal Tip Format" – doesn't even reference the "tip credit" or provide any information required under § 203(m). (Doc. No. 43-2 at 1).  It merely provides employees with notice of how tips collected from the bartenders and

servers will be redistributed to participants of the restaurant's tip pool. (Id.). Accordingly, the "Artisanal Tip Format" cannot satisfy the notice requirements of § 203(m).

In short, Artisanal failed to provide the required notice under 29 U.S.C. § 203(m) for use of the tip credit and thus was not permitted to use employees' tips as a "tip credit" toward its minimum wage obligation.

### b. Unlawful Deductions

Artisanal concedes that is was improper for Artisanal to take deductions for breakage and uniform expenses. See (Doc. No. 43-3 at 5). These unlawful deductions contributed to Artisanal's failure to pay Plaintiffs a minimum wage.

Finding that there is no dispute of material fact regarding the tip credit or breakage policies or actions at Artisanal, this Court holds that Artisanal (1) failed to provide adequate notice to Plaintiffs of the intention to use a portion of Plaintiffs' tips toward satisfying the federal minimum wage as required by section 203(m) and (2) took improper deductions from Plaintiffs' minimum wage for breakage, laundry, uniforms, and other fees/charges. As such, the Court grants summary judgment to Plaintiffs on their failure to pay minimum wage claim.

### B. Plaintiff's Overtime Claim

Artisanal further concedes that the overtime wages to which some of the employees were entitled were incorrectly calculated at 1.5 times the tip credit base wage rather than 1.5 times the then current minimum wage without application of the tip credit. (See Doc. No. 43-3 at 6).

Therefore, the Court grants summary judgment to Plaintiffs on their overtime claim.

### C. Liquidated Damages

An employer who violates the minimum wage provisions of the FLSA "shall be liable to the . . . employees affected in the amount of . . . their unpaid overtime compensation . . . and in

an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Court has discretion, however, to deny or limit an award of liquidated damages where the employer shows that, despite the failure to pay appropriate wages, the employer acted in "good faith" and had "reasonable grounds" for believing that the acts or omissions giving rise to the failure did not violate the FLSA. 29 U.S.C. § 260. The employer bears a "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Brinkley–Obu v. Hughes Training, 36 F.3d 336, 357 (4th Cir. 1994) (quotation omitted).

Liquidated damages are the "norm" in cases in which the FLSA is violated. Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir. 1997). "Liquidated damages 'are considered compensatory rather than punitive in nature,' . . . and constitute 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" Roy v. Cnty. of Lexington, S.C., 141 F.3d 533, 548 (4th Cir. 1998) (quoting Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997) (citing Brooklyn Sav. Bank v. O'Neill, 324 U.S. 697, 707 (1945)).

Defendant contends that summary judgment is not appropriate on the issue of liquidated damages because (1) Artisanal "employed an accountant as a bookkeeper and relied upon that accountant to accurately pay overtime wages; and (2) that Anita Greene – on one occasion – sought the assistance of an attorney with respect to its employee handbook policies including its breakage policy. (Doc. No. 43-3 at 8). Artisanal's evidence of good faith is insufficient to survive summary judgment.

First, Mrs. Greene testified that Artisanal employed an accountant from 2014 to 2018 as a "bookkeeper to oversee and perform financial duties, including payroll. During this time, [she]

20

relied upon this accountant to accurately pay overtime for all employees. After this accountant left, [she] did the payroll using a payroll software program." (Doc. No. 43 at ¶ 8). The law is clear that Artisanal cannot abrogate its own FLSA compliance obligations by delegating them to an agent/subordinate (or computer software). See, e.g., Chao v. Barbeque Ventures, LLC, 547 F.3d 938 (8th Cir. 2008) (rejecting the contention that "delegating the payroll function to a subordinate satisfies the FLSA: '[T]he mandate of the statute is directed to the employer and he may not escape it by delegating it to others. The duty rests on the employer to inquire into the conditions prevailing in his business. He does not rid himself of that duty because the extent of the business may preclude his personal supervision and compel reliance on subordinates. He must then stand or fall with those whom he selected to act for him . . . the duty must be held personal, or we nullify the statute.'") (quoting Goldberg v. Kickapoo Prairie Broad. Co., 288 F.2d 778, 781 (8th Cir. 1961)). Accordingly, Artisanal was not acting in "good faith" by delegating its duty and hoping that its accountant was properly calculating/paying employees' overtime. (Id.).

Artisanal also attempts to create an issue of fact with respect to "good faith" by submitting the declaration of Anita Greene claiming that:

> In March of 2016, [she] consulted with an attorney regarding Artisanal's Employee Handbook and several policies, including deductions for breakage. I was told that while there was not definitive case law on the issue in the appliable federal courts for our area but since the anticipated breakage deductions would be de minimus, it was better not to make the deductions mandatory, but rather voluntary.

(Doc. No. 43-3 at 8; Doc. No. 43 at ¶ 8). As Artisanal correctly notes, obtaining legal advice related to the employer's compliance obligations under the FLSA with respect to the alleged violation at issue is relevant to the employer's good faith defense to liquidated damages under the FLSA. Roy, 141 F.3d at 548–49. However, Mrs. Greene's declaration is directly contradicted by her sworn deposition testimony and is therefore disregarded for purposes of this Motion.

21

The Fourth Circuit has "consistently held that a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999). "At the summary judgment stage, if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule." Kinser v. United Methodist Agency for the Retarded—W. N.C., Inc., 613 Fed. Appx. 209, 210 (4th Cir. 2015) (unpublished). The Fourth Circuit Court of Appeals has held,

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.

Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (internal citations omitted).

In her deposition, Anita Greene testified that she only spoke with an attorney about the legality of Artisanal's tip pool policy under the FLSA; she never spoke to an attorney related to any other FLSA compliance issues, which would include deductions from wages for breakage. (Greene Dep. 75:11–76:11, 107:7–11, 109:9–25). Thus, Mrs. Greene's declaration testimony directly contradicts her sworn deposition testimony – it cannot be considered to create an issue of fact for purposes of Artisanal's good faith defense.

Even if the Court were to consider her declaration testimony, it still cannot create a question of fact with respect to Artisanal's good faith defense. First, Artisanal was advised to make the deductions voluntary (Doc. No. 43 at ¶ 8), yet Artisanal made the deductions involuntary, requiring Plaintiffs to sign authorizations permitting the restaurant to deduct the cost of breakage (and uniform rental/laundry fees) from their paychecks without request or

22

authorization by the employee (Doc. No. 43-2 at 2) and regularly took these deductions from Plaintiffs' paychecks. (See, e.g., Doc. No. 40-5 at 6–32). The failure to follow legal advice from counsel related to FLSA compliance obligations negates "good faith." Mumby v. Pure Energy Servs. (USA), Inc., 636 F.3d 1266, 1270 (10th Cir. 2011) ("While not a complete defense, an employer may still assert a good-faith reliance on counsel provided it shows '(1) a request for advice of counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice.' (quoting U.S. v. Wenger, 427 F.3d 840, 853 (10th Cir. 2005) (emphasis added); also citing U.S. v. Bush, 626 F.3d 527, 539 (9th Cir. 2010) ("An advice-of-counsel instruction requires the defendant to show that he made a full disclosure of all material facts to his attorney and that he then relied in good faith on the specific course of conduct recommended by the attorney.") (internal quotation marks omitted) (emphasis added)).

More importantly, Mrs. Greene's declaration testimony is limited to alleged legal advice regarding compliance with respect to deductions under its "breakage" policy only. (See Doc. No. 43 at ¶ 8). This is a very limited aspect of Artisanal's multiple FLSA violations alleged in this case. Mrs. Greene's declaration does not provide testimony that she consulted an attorney with respect to any other alleged FLSA violations in this case, including (1) Artisanal's conceded violations related to deductions for uniform rental fees, uniform cleaning fees and "check mistakes" that were charged back to Plaintiffs; (2) Artisanal's conceded violations related to improper calculation of Plaintiffs' overtime; and (3) the FLSA's tip credit and Artisanal's notice obligations under § 203(m). (See id.). Artisanal's alleged consultation with an attorney on the limited issue of the legality of its breakage policy cannot establish "good faith" with respect to all of Plaintiffs' claims as a matter of law. Copantitla, 788 F. Supp. 2d at 316–17 (finding

23

Defendant's evidence did not show good faith: "Even though [Defendant's] consultation with an accountant constitutes an 'active step,' 'its purpose was plainly not to "ascertain the dictates of the FLSA" with respect to the issue at hand,' namely the prerequisites for taking a 'tip credit' under the FLSA and the calculation of overtime wages").

Mrs. Greene testified in her deposition that she consulted an attorney for the limited purpose of obtaining legal advice on the legality of Artisanal's tip pool policy only and that she, nor any other Artisanal management, sought legal advice regarding any of its many other FLSA obligations, including those implicated in this case. (Greene Dep. 75:11–76:11, 107:7–11, 109:9–25). Accordingly, Artisanal has not, and cannot, create a question of fact with respect to its "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Brinkley–Obu, 36 F.3d at 357.

## IV. CONCLUSION

Because there is no dispute of material fact regarding either Plaintiffs' failure to pay minimum wage claim or overtime claim, the Court holds that summary judgment is GRANTED on both counts. Furthermore, because liquidated damages are the norm in cases in which FLSA is violated and because Artisanal failed to bear its plain and substantial burden of putting forward any evidence that could persuade the Court that the failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon it more than a compensatory verdict, the Court holds that Plaintiffs' request for liquidated damages is GRANTED.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiffs' Partial Motion for Summary Judgment, (Doc. No. 40), is **GRANTED**.

Signed: January 25, 2021

Max O. Cogburn Jr.
United States District Judge